## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

HO-CHUNK, INC.
1 Mission Drive
Winnebago, NE  68071;

WOODLANDS DISTRIBUTION COMPANY
701 Buffalo Trail
Winnebago, NE  68071;

HCI DISTRIBUTION COMPANY
701 Buffalo Trail
Winnebago, NE  68071; and

ROCK RIVER MANUFACTURING COMPANY
509 Reuben Snake Avenue
Winnebago, NE 68071,

        *Plaintiffs,*

      v.

LORETTA LYNCH, in her official capacity,
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530;

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530;

THOMAS E. BRANDON, in his official capacity,
Acting Director
U.S. Bureau of Alcohol, Tobacco, Firearms and
Explosives
99 New York Avenue, NE
Washington, DC 20226; and

UNITED STATES BUREAU OF ALCOHOL,
TOBACCO, FIREARMS AND EXPLOSIVES
99 New York Avenue, NE
Washington, DC 20226,

        *Defendants.*

**Case No.**

**COMPLAINT**

COMES NOW Plaintiffs, Ho-Chunk, Inc., Woodlands Distribution Company, HCI

Distribution Company, and Rock River Manufacturing Company (collectively, the "Plaintiffs"), by

and through undersigned counsel, and complains of the Defendants as follows:

## INTRODUCTION

1.      Inter-Tribal trade has existed in the Americas since well before European contact.

Historians have documented inter-tribal trade in tobacco and other tribal products to the pre-

Columbian period of North America.

2.      By the time of extended European contact, Indian tribes were involved in a varied

and intricate inter-regional economic trade systems. *George I. Quimby, Indian Culture and*

*European Trade Goods; The Archaeology of the Historic Period in the Western Great Lakes Region*

*(Madison: University of Wisconsin Press, 1966).*  It is well documented that Indians were the first to

give tobacco to Columbus and other European settlers upon their arrival on the American Continent.

It is also well documented that trade in Indian tobacco, much of which took place between tribes,

played a significant role in the formation of the economy of the United States and the settlement of

North America.

3.      Thus, tobacco has played and still plays a significant role in tribal culture, and tribal

history, and it has long been a catalyst for tribal economies.

4.      This case arises from improper efforts by officials of the United States to interfere

with and even possibly shut down Plaintiffs' lawful tobacco business activities through direct and

indirect threats of prosecution under the Contraband Cigarettes Trafficking Act, 18 U.S.C. §§2341,

*et seq.* ("CCTA"). Behind these officials' actions lies the Master Settlement Agreement, a private

1998 settlement agreement between 46 states' attorneys general and major tobacco manufacturers

resolving suits over the healthcare-related costs from smoking (the "MSA"). Through the MSA,

states agreed to protect participating manufacturers' market share in exchange for a fixed share of

their revenues. The amount of a state's revenue share, in turn, depends on its efforts to police and exclude non-participating manufacturers from its cigarette markets.

5      To affect its purpose of protecting market share and managing the sharing of tobacco revenues with states, the MSA included model laws drafted by Big Tobacco and adopted by participating states (collectively, the "MSA laws"). The MSA laws regulate what cigarettes may be sold, what prices may be charged, and what persons may engage in tobacco sales generally. A *de facto* federal agreement, the MSA handed participating manufacturers a secure national market by eliminating price arbitrage with non-participating states and non-participating manufacturers like Rock River Manufacturing Company.

6.      It is undisputed that 30 of the 46 MSA states are home to over 340 federally recognized tribes.  It is also undisputed that tobacco has been culturally and economically significant to Native communities since time immemorial; and that the modern, global tobacco economy began in Native North America. Despite this, neither the MSA states nor any of the participating manufacturers ever invited the Winnebago Tribe or its economic arm, Ho-Chunk Incorporated, to participate in the settlement discussions that led to the MSA. Nor did they seek to involve Congress which, since 1789, has exercised exclusive and plenary power over Indian affairs. Having failed to consult with the Plaintiffs or other federally recognized tribes over the MSA, states and big tobacco now seek to impose the states' MSA's provisions on Indian country and to force legitimate tribal enterprises, including those operated by the Plaintiffs, to conform to its terms. Aiding and abetting these efforts are certain officials of the ATF, whose efforts to enforce the CCTA's records keeping requirements ignores the fact that they are inapplicable to the Plaintiffs.

7.      Under the CCTA's records keeping requirements, sellers, manufacturers, and distributers of tobacco products are required to keep records of their tobacco activities and make those records available for inspection by agents of the ATF.  Once the ATF obtains this information through an inspection, it is then free to present that information to United States Attorneys, as ATF

3

has threatened here, in an effort to secure civil fines and criminal charges against tribal entities and their employees for alleged violation of the CCTA.

8.      The CCTA is not a federal proxy for applying the MSA laws to Indian country. Congress enacted the CCTA to prevent organized crime and terrorists groups from benefiting from illegal cigarette sales.  The statute seeks to "protect tribal governments and tribal sovereignty" and to ensure tribal governments engaged in tobacco commerce are not targeted under the statute. 151 Cong. Rec. H6273-04, (daily ed. July 21, 2005) (Statement of Rep. Conyers and Kildee), 2005 WL 1703380, at *H6284. Thus, Congress specifically added what has become Section 2343(b) to the CCTA to insure that Tribes did not have to file reports of their tobacco activities with the United States Attorney General.

## **PARTIES**

9.      Plaintiff Ho-Chunk Incorporated ("HCI") is a 100% tribally owned entity established by the federally recognized Winnebago Tribe of Nebraska ("Tribe") under its tribal law.  HCI acts as the economic development arm of the Tribe.  HCI has its principal place of business on the Winnebago Reservation and it is the parent company of the wholly owned subsidiaries: Rock River Manufacturing Company ("Rock River"), Woodlands Distribution Company ("Woodlands"), and HCI Distribution Company ("HCID").  HCI does not ship, sell, or distribute cigarettes or smokeless tobacco.

10.     Plaintiff Rock River is a wholly owned subsidiary of HCI and is located on the Winnebago Reservation.  Rock River manufacturers and imports tobacco products under licenses issued by the Winnebago Tribe and the U.S. Alcohol and Tobacco Tax and Trade Bureau, an arm of the United States Treasury.  Rock River sells the tobacco products it manufactures and imports to HCID for its distribution to tribally-licensed retailers located within Indian Country, and to state-licensed distributors within several states

11.     Plaintiff Woodlands is a subsidiary of HCI and is located on the Winnebago

Reservation. Woodlands holds a tobacco distributor's license from the Winnebago Tribe and from several states. Woodlands sells native tobacco products to off-reservation businesses. Woodlands also sells to several on-reservation businesses operating in states with tribal/state tobacco compacts or agreements. Woodlands does not ship, sell, or distribute any non-native-produced tobacco products. Woodlands pays all applicable state tobacco taxes and fees to the appropriate state governments, complies with all applicable state escrow requirements, and files all applicable Prevent All Cigarette Trafficking Act reports.

12.     Plaintiff  HCID is a wholly owned subsidiary of HCI and is located on the Winnebago Reservation.  HCID holds tobacco distributors' licenses from the Winnebago Tribe and from several tribes.  HCID engages exclusively in the purchase and resale of tobacco products which are produced by, and purchased from, Rock River and other Native American companies on Indian Reservations in the United States and Canada.  HCID does not ship, sell, or distribute any non-native-produced tobacco products.  HCID's only customers are Native American business entities owned or licensed by federally recognized tribes and located on American Indian Reservations in the United States.  All of HCID's sales are made in full compliance with the applicable laws of the Winnebago Tribe and the Tribes on whose Reservations its purchasers are located.  All of HCID's sales are made on the Winnebago Indian Reservation and are stamped with the applicable tribal tobacco stamp as required by local tribal law.

13.     Defendant Loretta Lynch is the Attorney General of the United States (the "Attorney General"), with offices located at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530. She is sued in her official capacity.

14.     Defendant United States Department of Justice is an executive agency of the United States ("DOJ"), with offices located at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

15.     Defendant Thomas E. Brandon is the Acting Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, a bureau within the U.S. Department of Justice, with offices located at 99 New York Avenue, NE, Washington, DC 20226.  He is sued in his official capacity.

16.     Defendant United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is a bureau within the U.S. Department of Justice, with offices located at 99 New York Avenue, NE, Washington, DC 20226.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (act regulating commerce) and 1361 (mandamus against federal official), as hereinafter more fully appears.

18.     This Court has jurisdiction to grant the declaratory and injunctive relief requested in this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Mandamus and Venue Act, 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

19.     Venue in this action lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(A) and (B), in that:  (i) this an action where the Defendants are agencies of the United States and officers and employees of such agencies acting in their official capacities; (ii) one or more of the Defendants resides within the District of Columbia; and (iii) a substantial part of the events or omissions giving rise to the claims in this action occurred within the District of Columbia.

## STATEMENT OF FACTS

20.     The Winnebago Tribe of Nebraska is a federally-recognized Tribe.  *See* 81 Fed. Reg. 5019, 5023 (Jan. 29, 2016). The Tribe is located on the federally-recognized Winnebago Indian Reservation ("Reservation").  The Tribe's Reservation falls within the federal definition of Indian Country.  *See* 18 U.S.C. §1151.  Plaintiffs are economic subdivisions of the Tribe.

21.     The Winnebago Tribe created HCI under Tribal law to foster economic development on the Winnebago Reservation and to create economic opportunities for Tribal members.  HCI is

critical to the Winnebago Tribe's survival due to the Tribe's inability to raise revenue through more traditional means.  Much of the Tribe's land is held in trust by the United States government or has been diminished through allotment leaving the Tribe unable to fund its governmental programs through property tax revenue.

22.     Before HCI's creation, the Winnebago Reservation was an economically depressed region experiencing chronic poverty and severe unemployment that reached as high as 65%.  HCI has begun to reverse that situation as businesses owned and managed by HCI, such as Plaintiffs Rock River, Woodlands, and HCID, have helped to create hundreds of jobs on the Reservation.

23.      All of the profits earned by HCI (including from Plaintiffs' Rock River, Woodlands, and HCID) are owned by the Tribe.  The Tribe uses this money to support the continued success of HCI and to fund tribal programs in areas like education, health care, public safety, infrastructure, and social services.

### The June 24th Letter

24.     Plaintiffs Rock River, Woodlands, and HCID each received identical letters from the ATF. By letters dated June 24, 2015 [the year 2015 appears to be a typographical error, since all three letters were received by the Plaintiffs via U.S. mail a few days after June 24, 2016, and all were dated June 24, 2015] Keith Krolezyk, Chief, Alcohol and Tobacco Enforcement Branch of the ATF, advised the Plaintiffs, Rock River, Woodlands, and HCID that the "purpose of this letter is to schedule a date, within 15 days of the receipt of this letter, for ATF officers to inspect and copy (electronic copy preferred) the Contraband Cigarette Trafficking Act (CCTA) records that are required to be maintained by your business." Each of these letters then goes on to cite to the records keeping language of the CCTA, contained in 18 U.S.C. §2343(a); the implementing regulations of the CCTA found in 27 C.F.R. §§646.146 and 646.147; and the violations and penalties section of the CCTA found in 18 U.S.C. §§2342(b) and 2344(b). These letters will be referred to collectively herein as the "June 24th Letters." Copies of the June 24th Letters are attached hereto as Exhibit 1.

**The CCTA Record Keeping Requirements**

25.     The CCTA requires the tobacco business entities that fall within its coverage to keep certain records.  This requirement is made applicable by 18 U.S.C. §2343, a provision which does not apply to the Plaintiffs.

26.     Section 2343 (a) states that: "Any person who ships, sells, or distributes any quantity of cigarettes in excess of 10,000, or any quantity of smokeless tobacco in excess of 500 single-unit consumer-sized cans or packages, in a single transaction shall maintain such information about the shipment, receipt, sale, and distribution of cigarettes as the Attorney General may prescribe by rule or regulation.  The Attorney General may require such person to keep such information as the Attorney General considers appropriate for purposes of enforcement of this chapter, including--

(1) the name, address, destination (including street address), vehicle license number, driver's license number, signature of the person receiving such cigarettes, and the name of the purchaser;

(2) a declaration of the specific purpose of the receipt (personal use, resale, or delivery to another); and

(3) a declaration of the name and address of the recipient's principal in all cases when the recipient is acting as an agent.

Such information shall be contained on business records kept in the normal course of business."

27.     Thus, the CCTA, by its own terms, conditions the records keeping requirement of Section 2343(a) on the regulations prescribed by the Attorney General.

28.     The regulations prescribed by the Attorney General do not apply to Indian Country. Title 27 C.F.R. §646.142,  entitled "Territorial Extent," makes it clear that "The provisions of the regulations in this part apply in the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and the Virgin Islands." The regulation does not state, nor does it even suggest, that they apply to Indian Tribal businesses operating in Indian Country.

29.     This fact is further clarified in 27 C.F.R. §646.143 "Meaning of Terms" which defines a "State" to mean "A State of the United Sates, the District of Columbia, the Commonwealth of Puerto Rico, or the Virgin Islands."  There is no reference to its application in "Indian Country."

30.     The term "Indian Country" is defined in the CCTA, 18 U.S.C. §2346 (b)(1) by reference to18 U.S.C. §1151, "Indian County Defined."  Section 1151 defines "Indian country" to mean "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

31.     In fact, the Attorney General chose not to use the normal definition of a "state" when he promulgated these regulations.  He instead chose to define the term to include the District of Columbia, the Commonwealth of Puerto Rico or the Virgin Islands, geographic areas of the United States which the average American would not normally classify as states.  Had the Attorney General intended to impose the record keeping provisions of this statute on "Indian country," he would have added "Indian country" to the list of other U.S. geographic areas not normally referred to as states.

32.     This reading of the regulations is consistent with one of the congressional goals of the statute, which is to "protect tribal governments and tribal sovereignty" and to ensure tribal governments engaged in tobacco commerce are not targeted under the statute. 151 Cong. Rec. H6273-04, (daily ed. July 21, 2005) (Statement of Rep. Conyers and Kildee), 2005 WL 1703380, at *H6284.

33.     The language of the CCTA, read with the Attorney General's implementing

regulations at 27 C.F.R. §§646, *et seq.*, establishes that the recordkeeping requirements of 18

U.S.C. §2343 do not attach to HCID, Rock River or Woodlands—entities which do not fall within

the "Territorial extent" of 27 C.F.R. §646.142.

34.     While both Rock River and Woodlands are firm in their position that the records

keeping provisions of the CCTA are not applicable to them, both companies have provided the

records of their off-reservation sales to the ATF solely to demonstrate their willingness to maintain

a good working relationship with that agency.

**The August 4th Letter**

35.     After Plaintiffs enunciated their positions on the inapplicability of the CCTA record

keeping requirements, and requested that ATF not take civil or criminal action until Plaintiffs

obtained judicial interpretation of these important issues, ATF responded by stating it would not

accede to the Plaintiffs' request and stated that it intends to confer with the United States

Attorney's Office for the District of Nebraska.  A copy of the August 4th Letter is attached hereto as

Exhibit 2.

**FIRST CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(CCTA Record Keeping Requirements)**

36.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through

35 of this Complaint.

37.     Plaintiffs ask this Court for a Declaration that the CCTA, 18 U.S.C. §2243(a), as

implemented by the Attorney General, is not applicable to the Plaintiffs Rock River, Woodlands,

and HCID; that it cannot be used to require those Plaintiffs to maintain the records required by that

statue; and that Section 2243(a) cannot be used to compel ATF's access to the business records of

the Plaintiffs Rock River, Woodlands, and HCID that ATF requested in the June 24th Letters.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against

Defendants as follow:

1.    Issue an order enjoining the Defendants from enforcing 18 U.S.C. §2343 (a) on

Plaintiffs Rock River, Woodlands, and HCID;

2.    Award costs, fees and expenses, and reasonable attorneys' fees and expenses, to

Plaintiff pursuant to and in accordance with the Equal Access to Justice Act, 28

U.S.C. § 2412; and

3.    Grant such other further relief as this honorable Court may deem just and proper.

Respectfully submitted this 15th day of August, 2016,


/s/ B. Benjamin Fenner
DC Bar No. 1011266
John M. Peebles (DC Bar No. NE15730)
Patricia A. Marks (DC Bar No. 446702)
B. Benjamin Fenner (DC Bar No. 1011266)
FREDERICKS PEEBLES & MORGAN LLP
401 9th St. NW, Suite 700
Washington, DC 20004
(212) 450-4887

# EXHIBIT 1



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Philadelphia Field Division*

Philadelphia, Pennsylvania 19106
www.atf.gov

August 4. 2016

John M. Peebles, Esq.
Fredericks, Peebles & Morgan, LLP
2020 L. Street, Suite 250
Sacramento, California 95811

Dear Mr. Peebles:

On June 24, 2016, pursuant to the inspection authority granted to the United States under the
record keeping provisions of the Contraband Cigarette Trafficking Act, (CCTA), 18 U.S.C. §
2343(a) and (c), Keith Krolczyk, Chief, Alcohol, Tobacco Enforcement Branch, Bureau of
Alcohol, Tobacco Firearms and Explosives (ATF), sent letters to HCI Distribution, 710 Buffalo
Trail, Winnebago, Nebraska, 68071; Rock River Manufacturing, 505 Ho-Chunk Plaza,
Winnebago, Nebraska 68071; and Woodlands Distribution, One Mission Drive, Winnebago,
Nebraska 68071. *See* Attachments 1-3. These three companies commercially distribute cigarettes
in the United States. The letters stated ATF's intention to inspect records these entities must
maintain under the CCTA and which are subject to inspection by ATF. *See* 18 U.S.C. § 2343(a)
and (c) and 27 C.F.R. §§ 646.146-150. In multiple conversations with yourself and Attorney
Patty Marks your firm acknowledged receipt of these letters.

As we reiterated to you on the phone, this inspection is pursuant to ATF's authority under the
CCTA, and is not pursuant to the Prevent All Cigarette Trafficking (PACT) Act, 15 U.S.C. §§
375-378. In conversations and e-mails with our office since June 24, you indicated that you
would allow inspection of records of sales by Rock River Manufacturing and by Woodland
Distribution to non-Native American businesses. Arrangements have been made for ATF to
inspect these records on August 9, 2016. In a recent communication, however, you also
indicated that ATF Officers will not be allowed access to CCTA records involving shipments to
businesses operating on other Native American Tribal land. We understand that this position
applies to all three entities, Rock River, Woodland, and HCI Distribution.

In a letter to ATF Chief Counsel Charles R. Gross, dated July 28, 2016, you stated that "the
CCTA's implementing regulations are, by their own terms, not generally applicable to the (Ho-
Chunk) Tribe, or its own reservation business." You then stated that the CCTA regulations, 27
C.F.R. § 646.142, apply in the "several States" and that 18 U.S.C. § 2346(b) (1) defines Indian
Country as defined under 18 U.S.C. § 1151. Based on this you conclude that the CCTA
regulations only apply in States and do not apply in Indian Country and that these are mutually
exclusive terms.

John M. Peebles, Esq.

As you know, we disagree with your conclusion. Our position is that the CCTA regulations apply to businesses which commercially distribute tobacco to and from Indian Country. The Supreme Court has held that "Ordinarily, it is now clear [that] an Indian reservation is considered part of the territory of the State.") *Nevada v. Hicks,* 533 U.S. 353, 361-62 (2001) *(quoting* U.S. Dep't of Interior, *Federal Indian Law* 510 & n.1 (1958)). The Supreme Court also held in *Nevada v. Hicks,* (S)tate sovereignty does not end at the reservations border." *Id.* at 361-62 citing *Utah & Northern R. Co. v. Fisher,* 115 U.S 28 (1885). *See also Organized Village of Kate v. Egan,* 369 U.S. 60, 62 (1962); *accord Chemehuevi Indian Tribe v. California Bd. of Equalization,* 800 F.2d 1446, 1450 (9th Cir. 1986) ("The attributes of sovereignty possessed by [a California] Tribe do not negate the fact that [its] Reservation is a part of the State of California.

The authority under 18 U.S.C. § 2343(a) is extremely broad and it covers any person, including Native American businesses, that ships 10,000 or more cigarettes or 500 single units of smokeless tobacco. Indeed, because of the inherently economic nature of the distribution of commercial quantities of cigarettes, which has a substantial effect on interstate commerce, there is no requirement under the CCTA that the shipment must cross State lines. The recent decision by the Eastern District of New York, *New York v. Mtn.,* 2016 U.S. Dist. LEXIS 95329 (E.D.N.Y 2016) which briefly discussed the definition of a State under the PACT Act, concluded that the PACT Act had a unique definition of the term State, was a case of first impression, and did not address the CCTA . Accordingly, that case has no bearing on ATF's inspection authority under the CCTA. *See also* PACT Act "Exclusions regarding Indian Tribes and Tribal matters", (PACT act specifically states "Nothing in this Act shall be construed to amend, modify or otherwise affect- any Federal law, including Federal common law... regarding State jurisdiction." PACT Act. P.L 111-154 §5 124 Stat.1109).

Moreover, while Congress specifically exempted tribal governments from providing ATF with records relating to delivery sale shipments in excess of 10,000 cigarettes or 500 units of smokeless tobacco each month, it specifically did not exempt tribal governments from any of the CCTA record keeping requirements. *Compare* 18 U.S.C. § 2343(a) (any person who distributes 10,000 cigarettes or 500 units of smokeless tobacco must keep records prescribed by the Attorney General) *with* 18 U.S.C. § 2343(b) (Tribal Governments do not have to submit reports of delivery sales to Attorney General). *See also* 18 U.S.C. § 2346(a), Enforcement and Regulations (Attorney General shall enforce provisions of 18 U.S.C § 2341 et seq.) with 18 U.S.C. § 2346(b) (State may not bring civil action against an Indian Tribe or Indian in in Indian Country.) The reporting exception contained in 2346(b) would make no sense unless the record-keeping requirement in 2343(a) were, in the first place, applicable to Tribal Governments.

Additionally, the Courts have unanimously held that the CCTA is a statue of general applicability which the United States may enforce on Native American land. *See generally United States v. Baker,* 63 F.3d 1478 (9th Cir. 1995) and Ninth Circuit progeny; (holding that Native Americans are not exempt from the CCTA); *See United States v. Morrison,* 686 F. 3d. 94 (2d Cir. 2012); (CCTA applies on New York reservation); *United States v. Parry,* 2015 U.S. Dist. LEXIS 18004 at *18-19 (W.D. Mo. 2015) (law is settled that Native Americans are not

John M. Peebles, Esq.

exempt from the CCTA); *United States v. 1, 920, 000 Cigarettes*, 2003 U.S. Dist. LEXIS 12603 at 11-12 (W.D.N.Y 2003) (Court finds argument that CCTA is not a statute of general applicability to be without merit).

Your recent letter expresses your intent to file a civil lawsuit in an attempt to obtain a judicial resolution of our disagreement about the scope of the CCTA. In addition, you have asked that we agree to forestall pursuing any potential civil or criminal remedies under the CCTA during the pendency of such a lawsuit. As we have indicated on the phone, we are not in a position to accede to such a request without conferring with the United States Attorney's Office for the District of Nebraska, which we intend to do. In order to ensure that conversation is productive please let us know before August 15, 2016, if we have in any way incorrectly described or misconstrued your clients' willingness to allow ATF access to their records concerning sales to other Tribal Governments or entities.

In the meantime, we very much appreciate your willingness to facilitate on August 9, 2016, ATF's access to the Rock River and Woodland records that you agree are required by the CCTA. If you have further questions please contact me directly at (215) 446-7832 or (202) 302-4885.

Sincerely yours,

Jeffrey A. Cohen
Associate Chief Counsel, East

Enclosures

# EXHIBIT 2



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*99 New York Avenue, N E
Washington, DC 20226*

June 24, 2015

Woodlands Distribution
One Mission Drive
Winnebago, NE 68071

VIA: Federal Express

### RE: Contraband Cigarette Trafficking Act Records Inspection

Dear Sir or Madam:

The purpose of this letter is to schedule a date, within 15 business days of the receipt of this letter, for
ATF officers to inspect and copy (electronic copy preferred) the Contraband Cigarette Trafficking Act
(CCTA) records that are required to be maintained by your business.[1]

Pursuant to the CCTA, any person who ships, sells, or distributes any quantity of cigarettes in excess of
10,000, or any quantity of smokeless tobacco in excess of 500 single-unit consumer-sized cans or
packages, in a single transaction shall maintain such information about the shipment, receipt, sale, and
distribution of cigarettes as the Attorney General may prescribe by rule or regulation. The Attorney
General may require such person to keep such information as the Attorney General considers appropriate
for purposes of enforcement of this chapter, including:

(1)     the name, address, destination (including street address), vehicle license number, driver's
        license number, signature of the person receiving such cigarettes, and the name of the
        purchaser;

(2)     a declaration of the specific purpose of the receipt (personal use, resale, or delivery to
        another); and

(3)     a declaration of the name and address of the recipient's principal in all cases when the
        recipient is acting as an agent.

18 U.S.C. § 2343(a).

This information must be contained on business records kept in the normal course of business. *Id.* ATF
officers have the right to inspect this information pursuant to 18 U.S.C. § 2343(c).

Further, under 27 C.F.R. § 646.143, a "distributor" of cigarettes is "[a]ny person who distributes more
than 60,000 cigarettes in a single transaction." Distributors of cigarettes "shall keep copies of invoices,
bills of lading, or other suitable commercial records relating to each disposition of more than 60,000

---

[1] The CCTA applies to Native Americans and applies to transactions between Native American entities.
*See United States v. Baker*, 63 F. 3d 1478 (9th Cir. 1995); *United States v. Gord*, 77 F.3d 1192 (9th Cir
1996).

Woodlands Distribution

cigarettes." 27 C.F.R. § 146. For each such disposition, a distributor must show on dated commercial records, the following information:

(i)     The full name of the purchaser (if any);
(ii)    The name, address (including city and state), and signature of the person receiving the cigarettes;
(iii)   The street address (including city and state) to which the cigarettes are destined;
(iv)    The quantity of cigarettes disposed of;
(v)     The driver's license number of the individual receiving the cigarettes;
(vi)    The license number of the vehicle in which the cigarettes are removed from the distributor's business premises;
(vii)   A declaration by the individual receiving the cigarettes of the specific purpose of receipt (such as personal use, resale, delivery to another person, etc.); and
(viii)  A declaration by the person receiving the cigarettes of the name and address of his principal when he is acting as an agent.

*See* 27 C.F.R. §§ 646.147(a)(2)(i)-(viii) and (b).[2]

Such records required under 27 C.F.R. §§ 646.146 and 646.147 must be kept for a period of "three years following the close of the year in which the records are made" and the distributor must keep the records on his business premises. 27 C.F.R. § 150(a).

Knowing violations of rules and regulations promulgated under 18 U.S.C. §§ 2343(a) or 2346 or a violation of 18 U.S.C. § 2342(b) (false statements or representations with respect to required records) can result in fines of not more than $5,000 or imprisonment of not more than three years, or both. 18 U.S.C. § 2344(b).

Please contact Special Agent Ted Horton of the ATF Kansas City Field Division at Teddy.Horton@atf.gov or 816-835-7814 to schedule your inspection. If you have any questions concerning this letter please contact ATF Associate Chief Counsel Jeffrey A. Cohen at 215-446-7832.

Sincerely,

Keith T. Krolczyk
Chief, Alcohol and Tobacco Enforcement Branch

---

[2] There are separate requirements for distributors who are "exempted persons" under the regulation, 27 C.F.R. §§ 646.147(a), but ATF does not believe your company meets the definition of an exempted person. *See* 27 C.F.R. §§ 646.143.



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning  Use only the printed original label for shipping  Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges  along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay  non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim Limitations found in the current FedEx Service Guide apply  Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value  Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e g  jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide



 Shipment Receipt

**Address Information**

Ship to:
Woodlands Distribution
Woodlands Distribution
One Mission Drive

WINNEBAGO, NE
68071
US
0000000000

Ship from:
Keith T. Krolczyk
Bureau of ATF
99 New York Avenue

Washington, DC
20226
US
2026487130

**Shipment Information:**
Tracking no.: 776599965976
Ship date: 06/24/2016
Estimated shipping charges: 24.18

**Package Information**
Pricing option: FedEx Standard Rate
Service type: FedEx 2Day AM
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1  LBS
Declared Value: 1.00  USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: My Account - 855-855
Your reference: Letter
P.O. no.:
Invoice no.:
Department no.:

COPY

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.

The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*99 New York Avenue, N.E.*
*Washington, DC 20226*

June 24, 2015

HCI Distribution
701 Buffalo Trail
Winnebago, NE 68071

VIA: Federal Express

### RE:   Contraband Cigarette Trafficking Act Records Inspection

Dear Sir or Madam:

The purpose of this letter is to schedule a date, within 15 business days of the receipt of this letter, for ATF officers to inspect and copy (electronic copy preferred) the Contraband Cigarette Trafficking Act (CCTA) records that are required to be maintained by your business.[1]

Pursuant to the CCTA, any person who ships, sells, or distributes any quantity of cigarettes in excess of 10,000, or any quantity of smokeless tobacco in excess of 500 single-unit consumer-sized cans or packages, in a single transaction shall maintain such information about the shipment, receipt, sale, and distribution of cigarettes as the Attorney General may prescribe by rule or regulation. The Attorney General may require such person to keep such information as the Attorney General considers appropriate for purposes of enforcement of this chapter, including:

(1)   the name, address, destination (including street address), vehicle license number, driver's license number, signature of the person receiving such cigarettes, and the name of the purchaser;

(2)   a declaration of the specific purpose of the receipt (personal use, resale, or delivery to another); and

(3)   a declaration of the name and address of the recipient's principal in all cases when the recipient is acting as an agent.

18 U.S.C. § 2343(a).

This information must be contained on business records kept in the normal course of business. *Id.* ATF officers have the right to inspect this information pursuant to 18 U.S.C. § 2343(c).

Further, under 27 C.F.R. § 646.143, a "distributor" of cigarettes is "[a]ny person who distributes more than 60,000 cigarettes in a single transaction." Distributors of cigarettes "shall keep copies of invoices, bills of lading, or other suitable commercial records relating to each disposition of more than 60,000

---

[1] The CCTA applies to Native Americans and applies to transactions between Native American entities. *See United States v. Baker*, 63 F. 3d 1478 (9th Cir. 1995); *United States v. Gord*, 77 F.3d 1192 (9th Cir. 1996).

HCI Distribution

cigarettes." 27 C.F.R. § 146. For each such disposition, a distributor must show on dated commercial records, the following information:

    (i)     The full name of the purchaser (if any);

    (ii)    The name, address (including city and state), and signature of the person receiving the cigarettes;

    (iii)   The street address (including city and state) to which the cigarettes are destined;

    (iv)   The quantity of cigarettes disposed of;

    (v)    The driver's license number of the individual receiving the cigarettes;

    (vi)   The license number of the vehicle in which the cigarettes are removed from the distributor's business premises;

    (vii)   A declaration by the individual receiving the cigarettes of the specific purpose of receipt (such as personal use, resale, delivery to another person, etc.); and

    (viii)  A declaration by the person receiving the cigarettes of the name and address of his principal when he is acting as an agent.

*See* 27 C.F.R. §§ 646.147(a)(2)(i)-(viii) and (b).[2]

Such records required under 27 C.F.R. §§ 646.146 and 646.147 must be kept for a period of "three years following the close of the year in which the records are made" and the distributor must keep the records on his business premises. 27 C.F.R. § 150(a).

Knowing violations of rules and regulations promulgated under 18 U.S.C. §§ 2343(a) or 2346 or a violation of 18 U.S.C. § 2342(b) (false statements or representations with respect to required records) can result in fines of not more than $5,000 or imprisonment of not more than three years, or both. 18 U.S.C. § 2344(b).

Please contact Special Agent Ted Horton of the ATF Kansas City Field Division at Teddy.Horton@atf.gov or 816-835-7814 to schedule your inspection. If you have any questions concerning this letter please contact ATF Associate Chief Counsel Jeffrey A. Cohen at 215-446-7832.

Sincerely,

Keith T. Krolczyk
Chief, Alcohol and Tobacco Enforcement Branch

---

[2] There are separate requirements for distributors who are "exempted persons" under the regulation, 27 C.F.R. §§ 646.147(a), but ATF does not believe your company meets the definition of an exempted person. *See* 27 C.F.R. §§ 646.143.



After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning Use only the printed original label for shipping  Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancelation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value  Recovery cannot exceed actual documented loss Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide



FedEx Ship Manager - Print Your Label(s)                                          Page 1 of 1

 **Shipment Receipt**

**Address Information**

Ship to:
HCI Distribution
HCI Distribution
701 Buffalo Trail

WINNEBAGO, NE
68071
US
0000000000

Ship from:
Keith T. Krolczyk
Bureau of ATF
99 New York Avenue

Washington, DC
20226
US
2026487130

**Shipment Information:**
Tracking no.: 776599938972
Ship date: 06/24/2016
Estimated shipping charges: 24.18

**Package Information**
Pricing option: FedEx Standard Rate
Service type: FedEx 2Day AM
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1 LBS
Declared Value: 1.00 USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: My Account - 855-855
Your reference: Letter
P.O. no.:
Invoice no.:
Department no.:

Thank you for shipping online with FedEx ShipManager at fedex.com.

**Please Note**
FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

COPY



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*99 New York Avenue, N.E.*
*Washington, DC 20226*

June 24, 2015

Rock River Manufacturing
505 Ho-Chunk Plaza
Winnebago, NE 68071

VIA: Federal Express

### RE:  Contraband Cigarette Trafficking Act Records Inspection

Dear Sir or Madam:

The purpose of this letter is to schedule a date, within 15 business days of the receipt of this letter, for
ATF officers to inspect and copy (electronic copy preferred) the Contraband Cigarette Trafficking Act
(CCTA) records that are required to be maintained by your business.[1]

Pursuant to the CCTA, any person who ships, sells, or distributes any quantity of cigarettes in excess of
10,000, or any quantity of smokeless tobacco in excess of 500 single-unit consumer-sized cans or
packages, in a single transaction shall maintain such information about the shipment, receipt, sale, and
distribution of cigarettes as the Attorney General may prescribe by rule or regulation. The Attorney
General may require such person to keep such information as the Attorney General considers appropriate
for purposes of enforcement of this chapter, including:

  (1)   the name, address, destination (including street address), vehicle license number, driver's
        license number, signature of the person receiving such cigarettes, and the name of the
        purchaser;

  (2)   a declaration of the specific purpose of the receipt (personal use, resale, or delivery to
        another); and

  (3)   a declaration of the name and address of the recipient's principal in all cases when the
        recipient is acting as an agent.

18 U.S.C. § 2343(a).

This information must be contained on business records kept in the normal course of business. *Id.* ATF
officers have the right to inspect this information pursuant to 18 U.S.C. § 2343(c).

Further, under 27 C.F.R. § 646.143, a "distributor" of cigarettes is "[a]ny person who distributes more
than 60,000 cigarettes in a single transaction." Distributors of cigarettes "shall keep copies of invoices,
bills of lading, or other suitable commercial records relating to each disposition of more than 60,000

---

[1] The CCTA applies to Native Americans and applies to transactions between Native American entities.
*See United States v. Baker*, 63 F. 3d 1478 (9th Cir. 1995); *United States v. Gord*, 77 F.3d 1192 (9th Cir.
1996).

Rock River Manufacturing

cigarettes." 27 C.F.R. § 146. For each such disposition, a distributor must show on dated commercial records, the following information:

    (i)      The full name of the purchaser (if any);

    (ii)    The name, address (including city and state), and signature of the person receiving the cigarettes;

    (iii)   The street address (including city and state) to which the cigarettes are destined;

    (iv)   The quantity of cigarettes disposed of;

    (v)    The driver's license number of the individual receiving the cigarettes;

    (vi)   The license number of the vehicle in which the cigarettes are removed from the distributor's business premises;

    (vii)  A declaration by the individual receiving the cigarettes of the specific purpose of receipt (such as personal use, resale, delivery to another person, etc.); and

    (viii) A declaration by the person receiving the cigarettes of the name and address of his principal when he is acting as an agent.

*See* 27 C.F.R. §§ 646.147(a)(2)(i)-(viii) and (b).[2]

Such records required under 27 C.F.R. §§ 646.146 and 646.147 must be kept for a period of "three years following the close of the year in which the records are made" and the distributor must keep the records on his business premises. 27 C.F.R. § 150(a).

Knowing violations of rules and regulations promulgated under 18 U.S.C. §§ 2343(a) or 2346 or a violation of 18 U.S.C. § 2342(b) (false statements or representations with respect to required records) can result in fines of not more than \$5,000 or imprisonment of not more than three years, or both. 18 U.S.C. § 2344(b).

Please contact Special Agent Ted Horton of the ATF Kansas City Field Division at Teddy.Horton@atf.gov or 816-835-7814 to schedule your inspection. If you have any questions concerning this letter please contact ATF Associate Chief Counsel Jeffrey A. Cohen at 215-446-7832.

Sincerely,

Keith T Krolczyk
Chief, Alcohol and Tobacco Enforcement Branch

---

[2] There are separate requirements for distributors who are "exempted persons" under the regulation, 27 C.F.R. §§ 646.147(a), but ATF does not believe your company meets the definition of an exempted person. *See* 27 C.F.R. §§ 646.143.



ORIGIN ID:YYNA   (202) 648-7117
KEITH MORRIS
BUREAU OF ATF
99 NEW YORK AVENUE

WASHINGTON, DC 20226
UNITED STATES US

TO
ROCK RIVER MANUFACTURING
505 HO-CHUNK PLAZA
WINNEBAGO NE 68071
(000) 000-0000

SHIP DATE: 24JUN16
ACTWGT: 1.00 LB
CAD: 103565738/NET13730

BILL SENDER

REF: LETTER
DEPT

SX SUXA

TRK#  7765 9983 4275
0201

TUE - 28 JUN 12:00P
MORNING 2DAY

68071
NE-US  OMA

540J2/C0B0/727F

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning  Use only the printed original label for shipping  Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com  FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits. see current FedEx Service Guide.



 **Shipment Receipt**

**Address Information**

Ship to:
Select or enter
Rock River Manufacturing
505 Ho-Chunk Plaza

WINNEBAGO, NE
68071
US
000-000-0000

Ship from:
Keith T. Krolczyk
Bureau of ATF
99 New York Avenue

Washington, DC
20226
US
2026487117

**Shipment Information:**
Tracking no.: 776599834275
Ship date: 06/24/2016
Estimated shipping charges: 24.16

**Package Information**
Pricing option: FedEx Standard Rate
Service type: FedEx 2Day AM
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1  LBS
Declared Value: 1.00  USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: My Account - 855-855
Your reference:  Letter
P.O. no.:
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, Consult the applicable FedEx Service Guide for details.

The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated

