UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HO-CHUNK, INC., et al.,

    Plaintiffs,

v.

JEFF SESSIONS,[1] in his official capacity
as Attorney General of the United States,
et al.,

    Defendants.

Case No. 16-cv-01652 (CRC)

**MEMORANDUM OPINION**

Plaintiffs, tribal-owned corporations engaged in the distribution of cigarettes, seek a declaration clarifying whether certain recordkeeping requirements of the Contraband Cigarettes Trafficking Act apply to Indian tribal entities like them. The Court concludes that the relevant requirements do so apply, and will therefore grant summary judgment for Defendants.

**I. Background**

   A. Statutory Background

Nearly forty years ago, Congress enacted the Contraband Cigarettes Trafficking Act ("CCTA"), 18 U.S.C. §§ 2341–46, to remedy "the serious problem of organized crime and other large scale operations of interstate cigarette bootlegging"—i.e., untaxed cigarette trafficking—and to "provide law enforcement assistance and relief to cities and states" in support of that effort. S. Rep. 95-962, at 3, *reprinted in* 1978 U.S.C.C.A.N. 5518, 5518; see also H.R. Conf. Rep. 95-1778, 8, *reprinted in* 1978 U.S.C.C.A.N. 5535, 5536. The Act makes it a crime for "any

---

[1] By operation of Fed. R. Civ. P. 25(d), the current U.S. Attorney General, as former Attorney General Lynch's successor, has been "automatically substituted as a party."

person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). "[C]ontraband cigarettes," in turn, are "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication . . . [of] payment of cigarette taxes." 18 U.S.C. § 2341(2). The cigarettes must also be "in the possession of any person other than" a person falling within one of four exceptions, none of which apply to tribal entities. Id.

The Act also permits the Attorney General to establish recordkeeping requirements: "Any person who ships, sells, or distributes any quantity of cigarettes in excess of 10,000" must "maintain . . . information about the shipment, receipt, sale, and distribution of cigarettes," such as the "name, address, destination . . . vehicle license number, driver's license number, signature of the person receiving [the] cigarettes, and the name of the purchaser." 18 U.S.C. § 2343(a); see also 27 C.F.R. §§ 646.141–143, 646.146–47, 646.150, 646.153–55 (Attorney General's implementing regulations).[2] To ensure compliance with these recordkeeping requirements, and for the purpose of inspecting cigarette distributors' inventory, the Act authorizes officers of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to enter distributors' premises during normal business hours. 18 U.S.C. § 2343(c)(1). Denying access to ATF officers seeking to conduct such inspections can result in civil penalties as high as $10,000. 18 U.S.C. § 2343(c)(3).

---

[2] The implementing regulations were promulgated prior to a series of 2006 amendments (discussed further below), one of which lowered the quantity threshold for defining "contraband cigarettes," from 60,000 to 10,000. See Pub. L. 109-177, Title I, sec. 121, Mar. 9, 2006, 120 Stat. 233. The now out-of-date regulations still list the older, higher amount. See 27 C.F.R. 646.141.

2

The CCTA is silent as to whether the Act's original enforcement provisions apply in Indian territory or as to tribal entities. See generally Pub. L. No. 95–575, § 1, 92 Stat. 2463 (1978). A "State," for instance, is defined as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or the Virgin Islands," but the definition does not expressly include or exclude tribal reservations. 18 U.S.C. § 2343(4). However, reasoning that the statute was one "of general applicability," courts have unanimously held—beginning with a Ninth Circuit decision more than two decades ago—that the Act "appl[ies] with equal force to Indians," and is therefore enforceable on Indian land and against tribal entities and individuals. United States v. Baker, 63 F.3d 1478, 1484–86 (9th Cir. 1995); see also United States v. Morrison, 686 F.3d 94, 96 (2d Cir. 2012) (affirming application of CCTA to on-reservation cigarette seller in New York); Grey Poplars, Inc. v. 1,371,100 Assorted Brands of Cigarettes, 282 F.3d 1175, 1177 (9th Cir. 2002) ("[T]he CCTA is a federal statute of general applicability and it applies equally to Indians, even on the reservation, as it does to others."); United States v. Gord, 77 F.3d 1192, 1194 (9th Cir. 1996) (applying CCTA to manager of a tribal smoke shop); United States v. Parry, No. 4:13-CR-00291-07-BCW, 2015 WL 631979, at *6 (W.D. Mo. Feb. 13, 2015) ("[T]he law is settled that Indians are not exempt from the CCTA."); United States v. 1,920,000 Cigarettes, No. 02-CV-437A, 2003 WL 21730528, at *4 (W.D.N.Y. Mar. 31, 2003) (rejecting argument that the CCTA exempts Indians as "without merit").

In 2006, Congress amended the CCTA, primarily to add further enforcement provisions. See Pub. L. 109-177, Title I, sec. 121, Mar. 9, 2006, 120 Stat. 233. Two amendments are material here. First, Congress added a new *reporting* requirement—a subsection (b) inserted after the recordkeeping requirements set forth at 18 U.S.C. § 2343(a). See 18 U.S.C. § 2343(b). That provision requires certain cigarette sellers and distributors to submit a report to the U.S.

3

Attorney General, Treasury Secretary, and relevant state attorneys general and tax administrators, including various types of information about their cigarette and tobacco inventory. Id. § 2343(b), (d). Notably, while the new reporting provision specifically excluded "tribal government[s]" from its reach, id. § 2343(b), the preceding *recordkeeping* provision included no such exception—nor was one added, see id. § 2343(a). The other relevant 2006 amendment allowed states and local governments a share in enforcing the Act: They were now permitted to "bring an action in the United States district courts to prevent and restrain" CCTA violations, id. § 2346(b)(1), and to "obtain any other appropriate relief for [such] violations . . . including civil penalties, money damages, and injunctive or other equitable relief," id. § 2346(b)(2). The new language specified, however, that such state and local-government enforcement actions, could not be brought "against an Indian tribe or an Indian in Indian country." Id. § 2346(b)(1). Similarly, the amendment provided that "[n]othing in this chapter shall be deemed to abrogate or constitute a waiver of any sovereign immunity of a State or local government, or an Indian tribe against any unconsented lawsuit under this chapter." Id. § 2346(b)(2).

    B.  Factual Background and Procedural History

As alleged in the complaint, Plaintiff Ho-Chunk, Inc. ("HCI") is a wholly tribal-owned entity established by the Winnebago Tribe of Nebraska under its tribal law, and "acts as the [tribe's] economic development arm." Compl. ¶ 9. Plaintiffs Rock River Manufacturing Company ("Rock River"), Woodlands Distribution Company ("Woodlands"), and HCI Distribution Company ("HCI Distribution"), are wholly owned subsidiaries of HCI. Id. All three subsidiary companies are located on the Winnebago reservation in Nebraska, and have a role in either purchasing, manufacturing, distributing, or selling tobacco products. Id. ¶¶ 10–12.

4

In June 2016, pursuant to the CCTA's inspection provisions, see 18 U.S.C. § 2343(c), ATF Chief Keith Krolczyk sent letters to Rock River, Woodlands, and HCI Distribution, stating the agency's intent to inspect and copy relevant records and seeking to schedule a date for that inspection. Def.'s Mem. Supp. Mot. Summ. J. ("MSJ"), Declaration of Ellen V. Endrizzi ("Endrizzi Decl."), ¶ 3; Def.'s MSJ, Ex. 1. On August 3, ATF received a letter from Plaintiffs' counsel, who outlined his view that "there is some serious doubt surrounding the applicability of the CCTA and its regulations." Endrizzi Decl. ¶ 4; Def.'s MSJ, Ex. 2, at 4. Counsel went on to explain that the Winnebago Tribe would "provide . . . the requested information regarding its off-reservation transactions," but urged ATF to "suspend any further demands for the records of the inter-tribal trade transactions" so that it could "initiate an appropriate action in federal court . . . to clarify" its obligations under the CCTA. Def.'s MSJ, Ex. 2, at 4. The following day, ATF sent a letter reasserting its authority to inspect under the CCTA, and responding point-by-point to the various legal issues Plaintiffs' counsel had identified. See Def.'s MSJ, Ex. 3. On August 9, 2016, ATF agents met with counsel for HCI at an off-reservation facility, but were provided only with records related to "non-native sales." Endrizzi Decl. ¶ 6.

One week later, Plaintiffs filed a complaint in this Court under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act, seeking "a Declaration that [the recordkeeping requirements of] the CCTA, 18 U.S.C. § 2243(a), as implemented by the Attorney General, [are] not applicable to the Plaintiffs," and therefore "cannot be used to compel ATF's access to the business records . . . requested in [ATF's above-described] letters." Compl. ¶ 37. In light of the suit, ATF has refrained from enforcing its inspection authority under the CCTA "through in-person demand, district court order, or search warrant." Endrizzi Decl. ¶ 17. The parties now cross-move for summary judgment. The sole issue is the applicability of CCTA's

5

recordkeeping requirements to tribal entities, with the lion's share of the briefing addressing Plaintiffs' argument that "Indian country" does not fall within the territorial scope of the Act's recordkeeping provisions. In supplemental briefing, Plaintiffs advanced a new line of argument: They claim to be instrumentalities of a tribal government, and assert that such entities are not "persons" covered by the Act.

## II. Legal Standards

The Declaratory Judgment Act permits "any court of the United States" to "declare the rights and other legal relations of any interested party seeking such a declaration," provided that the case presents "an actual controversy" and is "within [the court's] jurisdiction." 28 U.S.C. § 2201; see also Fed. R. Civ. P. 57 (providing that the Federal Rules apply in declaratory judgment actions). Although the parties did not brief the issues, the Court finds that the matter presents a "controversy" that is properly justiciable, and that there is federal-question jurisdiction by way of the APA.[3] For challenges brought under the APA, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the

---

[3] Regarding justiciability, the Court finds that parties have easily established there is an "actual controversy" between them, 28 U.S.C. § 2201, as "[t]he facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). ATF's right to inspect Plaintiffs' premises, and Plaintiffs' potential liability for civil penalties, turn on the resolution of their dispute.

As for jurisdiction, there is federal-question jurisdiction, 28 U.S.C. § 1331, for cases brought under the Declaratory Judgment Act, 28 U.S.C. § 2201–2, where a "federal issue would inhere in the claim on the face of the complaint that would have been presented in a traditional damage or coercive action." 10B C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2767 (4th ed.); see also Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 248 (1952). This Court would inarguably have federal-question jurisdiction, by way of the Administrative Procedure Act ("APA"), over a "coercive" action brought by Plaintiffs—for instance, to enjoin ATF from issuing an in-person demand to search Plaintiffs' premises. See 5 U.S.C. § 706(2)(C). Accordingly, the Court has federal-question jurisdiction in this declaratory judgment action.

administrative record and otherwise consistent with the [relevant] APA standard of review." Coe v. McHugh, 968 F. Supp. 2d 237, 240 (D.D.C. 2013); see also Sec. Indus. & Fin. Markets Ass'n v. United States Commodity Futures Trading Comm'n, 67 F. Supp. 3d 373, 399 (D.D.C. 2014) ("[T]he general standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure does not apply to a review of agency actions."). As relevant to Plaintiffs' challenges here, the Court will "hold unlawful . . . [any] agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

**III. Analysis**

   A. <u>Whether the CCTA's Recordkeeping Provisions Apply to Tribal Entities</u>

Plaintiffs do not seek to challenge the decades of authority upholding the general applicability of the CCTA to Indian country. Pls.' Mem. Supp. Cross-Mot. Summ. J. ("Pls.' Cross-MSJ") 1, 5, 16–20. The task they appoint themselves, however, is arguably even more audacious: They argue that, while much of the CCTA may apply to them, the Act's *recordkeeping* provisions do not. The trouble is that neither the statute nor its implementing regulations support that reading.

Plaintiffs first contend that the recordkeeping provisions do not apply to them because the "[t]erritorial extent" of the relevant implementing regulations is specified as reaching "the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and the Virgin Islands," but not, specifically at least, "Indian country." Pls.' Cross-MSJ 7–9 (citing 27 C.F.R. § 646.142). But this language parrots, nearly verbatim, the statute's definition of "State." 18 U.S.C. § 2341(4) (defining "State" as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or the Virgin Islands"). That definition governs

7

the territorial reach of the statute's criminal provision, since "contraband cigarettes" must be found "in a State" with applicable cigarette taxes. 18 U.S.C. §§ 2341(2), 2342(a). Violation of the criminal provision, in turn, triggers multiple penalty provisions under the statute, including potential fines, imprisonment, and forfeiture. 18 U.S.C. § 2344(a)–(c). As previously discussed, however, see supra section I.A, courts have unanimously held that these provisions apply to Indian country, meaning that for purposes of the CCTA, "State" has been impliedly read to *include* tribal territory. In short, Plaintiffs ask the Court to apply one definition of "State" (one that includes Indian country) to the CCTA generally, and another definition of "State" (one that excludes Indian country) to the regulations that implement CCTA's recordkeeping provisions. That proposition is untenable. See Ratzlaf v. United States, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."); Sullivan v. Stroop, 496 U.S. 478, 484 (1990) (citing the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning" (quoting Sorenson v. Secretary of Treasury, 475 U.S. 851, 860 (1986))).

Plaintiffs' other arguments are grounded in the notion that the above-described 2006 amendments somehow suggest that the recordkeeping provisions exclude Indian country. See Pls.' Cross-MSJ 6–11. If anything, though, the amendments *confirm* that the CCTA's older provisions (including the recordkeeping requirements) were intended to have a general reach. As explained above, one of the more significant 2006 revisions permitted states and localities to bring enforcement actions under the CCTA. See 18 U.S.C. 2346(b). That new provision contains two discrete references to Indian tribes. The first is clearly limited to protecting "Indian tribe[s]" and "Indian[s] in Indian country" from "*civil action[s] . . . under this paragraph.*" 18 U.S.C. § 2346(b)(1) (emphasis added). The second, similarly, is aimed at protecting Indian

tribes from court actions brought by states and localities: It clarifies that "[n]othing in this chapter shall be deemed to abrogate or constitute a waiver of any sovereign immunity of a State or local government, or an Indian tribe against any unconsented lawsuit under this chapter." Id. § 2346(b)(2). Plaintiffs argue that reading "State" to include Indian country under the recordkeeping regulations somehow violates this latter provision, because it encroaches on "tribal sovereignty." Pls.' Cross-MSJ 9. But "sovereign immunity" is a term of art, and in this context it is clearly a reference to tribes' general immunity from suit, see <u>Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.</u>, 523 U.S. 751, 754 (1998)—not a broader policy statement regarding the autonomy of Indian government and lands.

The Court previously noted that the 2006 amendments included a new *reporting* requirement, inserted immediately following the recordkeeping provision, from which "tribal government[s]" were exempted. 18 U.S.C. § 2343(b). This amendment lends additional (and substantial) support to the reading that the CCTA's recordkeeping rules apply to tribal entities: Congress chose specifically to relieve Indian tribes from the Act's reporting requirements, but *not* its recordkeeping requirements. Plaintiffs argue that this analysis "effectively reads the tribal governmental exception out of [§] 2343(b) by requiring tribal governments to report." Pls.' Cross-MSJ 14. But that argument conflates two distinct provisions: The reporting provision, from which tribal governments clearly *are* exempted, covers additional categories of information, and it entails the active and regular submission of reports. It is clear that Congress sought to spare tribal governments from these more onerous requirements, while keeping in place their obligation to comply with the Act's longstanding recordkeeping rules.[4]

---

[4] Plaintiffs also cite comments from a House floor debate on the 2006 amendments, indicating concerns that a previous version of the amendments "could have had the unintended effect of targeting tribal governments who are legitimately involved in the retailing of tobacco

9

Finally, Plaintiffs lean for support on New York v. Mountain Tobacco Co., No. 12-cv-6276, 2016 WL 3962992 (E.D.N.Y. July 21, 2016), which applied § 2346(b)(1)'s prohibition on "civil action[s]" brought by states or localities against "Indian tribe[s] or an Indian[s] in Indian country" in granting summary judgment for a tribal corporation against the State of New York. Id. at *4–*7. Of course, that holding is inapposite here, since Defendants are federal authorities and § 2346(b)'s state enforcement provisions are therefore not implicated. However, Plaintiffs argue that Mountain Tobacco's reading of a *different* federal statute—the Prevent All Cigarette Trafficking ("PACT") Act, 15 U.S.C. § 375, et seq.—warrants a finding that Plaintiffs here fall outside the territorial coverage of the CCTA. See Pls.' Cross-MSJ 11–13. It does not. The PACT Act requires that certain filings be made by persons who distribute cigarettes in "interstate commerce." 15 U.S.C. § 376(a). The Mountain Tobacco court considered whether sales between Indian entities were conducted in interstate commerce. In concluding that they were not, the court found that the Act's distinct definitions of the terms "state," "Indian country," and "interstate commerce" had altered the "general rule that Indian reservations are a part of the states in which they are located." Mountain Tobacco, 2016 WL 3962992, at *8. The CCTA, however, does not contain any particular definitions pertaining to Indian tribes. As a result, even if this Court agreed with the above analysis, it would not apply in resolving the parties' dispute over the territorial reach of the CCTA.

---

products." See Pls.' Cross-MSJ 13–14 (citing 151 Cong. Rec. H6273-04, 2005 WL 1703380, at *H6284). To the extent the comments are entitled to any interpretive weight, they are fully consistent with the specific and limited protections for tribal governments that were added with the 2006 amendments. See 18 U.S.C. §§ 2343(b), 2346(b).

B. <u>Whether Tribal Instrumentalities are Covered "Persons" Under the CCTA</u>

As a separate line of argument, raised for the first time in supplemental briefing, Plaintiffs argue that they are instrumentalities of a tribal government, and that as such, they are not "persons" covered by the CCTA. <u>See</u> Pls.' Notice of Supplemental Authority ("Pls.' Supplement"), ECF No. 17.[5] As a threshold matter, it is unclear whether Plaintiffs are indeed tribal instrumentalities, and they appear to concede that this issue is—at a minimum—a factual dispute precluding summary judgment in their favor. <u>See</u> Pls.' Reply in Support of Supplement 3 n.1. Assuming for the sake of argument that Plaintiffs are instrumentalities of a tribal government, however, the Court finds they are nevertheless covered "persons" within the meaning of the CCTA.

Plaintiffs find support primarily in a stray piece of legislative history and an isolated agency comment. They cite a 1978 House Conference Report, which explains that the definition of "person" in 1 U.S.C. § 1—which applies to all acts of Congress by default—will apply to the CCTA. <u>See</u> H.R. Conf. Rep. 95-1778, 10, *reprinted in* 1978 U.S.C.C.A.N. 5535, 5538. Under that definition, "person" covers only "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Plaintiffs also cite a statement from the Bureau of Alcohol, Tobacco and Firearms, which accompanies the agency's 1980 implementing regulations and was issued in response to a comment from a presumably

---

[5] Plaintiffs' so-called "Notice of Supplemental Authority" was filed roughly three months after Defendants' reply brief and roughly one week prior to a previously scheduled hearing on the parties' cross-motions. Plaintiffs are reminded that such notices "should not be employed as a second opportunity to brief an issue not raised in the initial briefs," but rather "to cite new authorities released after briefing is complete." <u>Williams v. Romarm, SA</u>, 756 F.3d 777, 787 (D.C. Cir. 2014). Plaintiffs' supplemental filing broke both rules: It advanced novel arguments, and rested on no previously unavailable authority. Nevertheless, because Defendants did not move to strike the filing and offered to submit responsive briefing, the Court has evaluated the issue in reaching its decision.

non-tribal "government instrumentality" selling cigarettes on military reservations. 45 Fed. Reg. 48612. In the statement, the agency cites the above House Conference Report, and reasons that "government agencies and instrumentalities are exempt from the [CCTA's recordkeeping] requirements," since those entities do not fall within 1 U.S.C. § 1's definition of "person." Id.[6]

The problem for Plaintiffs is that these authorities are no match for the plain text of the statute—which clearly signals that tribal governments (and their agencies and instrumentalities) are intended to be covered "persons" under the CCTA. True, there is an "interpretive presumption that [the word] 'person' does not include the sovereign." Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 780 (2000); see also Inyo Cty., Cal. v. Paiute-Shoshone Indians, 538 U.S. 701, 708–12 (2003) (applying similar presumption in resolving statute's applicability to a tribal government). But that presumption is "not a hard and fast rule of exclusion," and "it may be disregarded . . . upon some affirmative showing of statutory intent to the contrary." Vermont Agency, 529 U.S. at 781 (internal quotations omitted). There is just such an "affirmative showing" of legislative intent here, as evidenced in multiple provisions of the CCTA.

First, the Act's "Definitions" section provides that "contraband cigarettes" must be "in the possession of any person other than" a person falling within one of four exceptions. 18 U.S.C. § 2341(2). None of those four exceptions mentions tribal governments or entities, but one of them applies to "an officer, employee, or other agent of the United States or a State, or

---

[6] Unrelatedly, Plaintiffs also cite a footnote in the House Conference Report, which they read to draw a meaningful distinction between the terms "Indian country" and "State." See H.R. Conf. Rep. 95-1778, 13 n.17, *reprinted in* 1978 U.S.C.C.A.N. 5535, 5542 n.17. As explained by the Ninth Circuit in Baker, the footnote merely addresses Congress's intent "not to preempt rights granted to Indians by the states to transport and distribute untaxed cigarettes." 63 F.3d at 1486. It says nothing about whether the CCTA's recordkeeping provisions apply to tribal entities.

any department, agency, or instrumentality of the United States or a State (including any political subdivision of a State) having possession of such cigarettes in connection with the performance of official duties." Id. § 2341(2)(D).[7] This provision reveals, first, that for purposes of the CCTA, at least under some circumstances, a governmental "department, agency, or instrumentality" may be a "person"—since otherwise there would be no need to specifically except such entities from the definition of "contraband cigarettes" (which must be in the possession of a "person"). Id. § 2341(2). Second, and more to the point, the provision shows that Congress knew precisely how to exempt governmental agencies and instrumentalities from the reach of the CCTA, but chose *not* do so with respect to tribal agencies and instrumentalities. Rather, by way of the "contraband cigarettes" definition, it specified that the CCTA would not apply "to any department, agency, or instrumentality *of the United States or a State* (including *any political subdivision of a State*)," making no mention of analogous tribal entities. Id. § 2341(2)(D) (emphasis added).

The final blow to Plaintiffs' not-a-"person" argument is furnished by § 2343(b), the Act's reporting requirement, which applies to "[a]ny person, except for a tribal government." Clearly, if Congress had considered "person" to exclude tribal governments, and their agencies and instrumentalities, that exception would have been unnecessary. Plaintiffs resist this inexorable logic by arguing that § 2343(b)'s exclusion for tribal governments, passed in 2006, merely "carried forward" the exclusion implied by 1 U.S.C. § 1's definition of "person," which was supposedly present since the Act's inception. Pls.' Supplement 3. But if it were Congress's aim to make express an exemption which before had been implied, or to clarify a definition which

---

[7] The "contraband smokeless tobacco" definition appears to be subject to an identical set of four exceptions. See 18 U.S.C. § 2341(7).

before had been ambiguous, why would Congress do so with respect to only one provision? For example, why did Congress not similarly except "tribal government[s]" when drafting the immediately preceding recordkeeping requirements, § 2343(a), or add "tribal governments" to the list of exceptions in the Act's definitional section, § 2341? Congress's choices make sense only on the understanding that tribal governments are "person[s]," subject to the Act unless specifically exempted.

Finally, the Court notes that an exemption for state—but not necessarily tribal—agencies and instrumentalities makes sense in light of the Act's stated purpose. As discussed above, Congress enacted the CCTA in large part to remedy "large scale operations of interstate cigarette bootlegging" and to "provide law enforcement assistance and relief to cities and states" to that end. S. Rep. 95-962, at 3, *reprinted in* 1978 U.S.C.C.A.N. 5518, 5518; see also H.R. Conf. Rep. 95-1778, 8, *reprinted in* 1978 U.S.C.C.A.N. 5535, 5536. To the extent the goal was to cut down on cigarette taxation avoidance, it would have made little sense to wholly exempt tribal agencies and instrumentalities from the Act—thus offering cigarette bootlegging organizations a clearly demarcated shelter from enforcement. By the same token, to the extent the goal was to aid states and localities in enforcing their cigarette taxation regimes, it would have been counterproductive to sweep the agencies of *those* governmental entities within the CCTA's ambit.

Even assuming Plaintiffs are instrumentalities of a tribal government, then, the Court concludes that they are nevertheless "persons" under the CCTA and therefore within the scope of the Act, except where specifically exempted.[8]

---

[8] Because the text of the CCTA is clear enough to foreclose Plaintiffs' not-a-"person" argument, the Court declines to consider Defendants' other responsive arguments, including their citation to a deferred prosecution agreement entered into by Plaintiffs HCI and HCI Distribution. Defs.' Response to Pls.' Supplement 7 & Exhibit 1. And since the Court has reached its holding without relying on that document, it will deny as moot Plaintiffs' motion to strike it.

## IV. Conclusion

For the foregoing reasons, the Court finds that the CCTA's recordkeeping requirements are applicable to Plaintiffs. Accordingly, Defendants' summary judgment motion will be granted. An appropriate Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: May 24, 2017